IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LARRY RAY SWEARINGEN,               §
     Petitioner,                   §
                          §
v.                                  §          NO. 4:09-CV-0300
                          §
LORIE DAVIS, Director,              §
Texas Department of Criminal Justice, §
Correctional Institutions Division,  §
             Respondent's.   §

## RESPONDENT'S RESPONSE IN OPPOSITION TO PETITIONER'S MOTION FOR RELIEF FROM JUDGMENT AND FOR STAY OF EXECUTION

Petitioner Larry Ray Swearingen is a Texas state inmate who unsuccessfully sought federal habeas relief under 28 U.S.C. § 2254 from his capital murder conviction and death sentence. The state trial court set Swearingen's execution for August 21, 2019. Swearingen now moves the Court to reopen its 2009 judgment to reconsider his previously filed petition for writ of habeas corpus that was dismissed as successive. He also seeks a stay of execution. For the reasons set out below, the Director opposes both his motion for relief from judgment and his motion to stay the execution.

## I.   Swearingen's Rule 60(b) Motion is Untimely.

This motion was filed with less than five days remaining until Swearingen's scheduled execution. Given that the veracity of the evidence at issue here has been contested and litigated since trial, Swearingen's motion is dilatory in the extreme and fails the statute's "reasonable time" requirement. *See* Fed. R. Civ. Proc. 60(c) (1) (Prescribing that "[a] motion under Rule 60(b) must be made within a reasonable time").[1]

Swearingen's motion for post–judgment relief rests on his assertion that this Court's prior judgment "was based on the false, misleading, and invalid scientific evidence."   ECF No. 54 at 16. Specifically, he claims that recent letters from the Texas Department of Public Safety Crime Lab (DPS Crime Lab) unequivocally recant and repudiate testimony at trial regarding the 1) blood evidence found under Trotter's fingernails and 2) the match between the pantyhose found around Trotter's neck and those found in Swearingen's trailer. *See id.*, at 8, 11. Despite what he contends, Swearingen unreasonably waited until the eleventh-hour to challenge the veracity of this trial testimony.

---

[1]   To the extent that Swearingen is asserting that Rule 60(b) relief is justified under Rule 60(b)(3) due to "fraud on the court," this motion is untimely under Rule 60(c)(1) which requires that motion filed under subsection (b)(3) be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. Proc. 60(c0(1). Swearingen waited a decade after this Court's judgment to seek relief under Rule 60(b). He is untimely.

The Fifth Circuit considered identical claims in Swearingen's recently rejected motion for authorization to file a fourth federal habeas corpus petition and found that Swearingen failed to make a prima facie showing that the factual predicate for his false testimony claims was not previously available. *See In re Swearingen*, No. 19-20565, slip op. at 6–7 (5th Cir. Aug. 16, 2019).

The Fifth Circuit said this about the timeliness of Swearingen's false testimony claim challenging the veracity of Cassie Carradine's testimony at trial:

> …the claim's "factual predicate"—that Carradine lacked a foundation for her testimony regarding possible contamination—could have been discovered long before the DPS letter was sent in August 2019.   Indeed, the record shows that Swearingen's attorneys were *already* aware of the issue: His trial attorneys objected to Carrdine's testimony on this point as "speculative," they cross-examined her on how she received and handled the fingernail scraping, and they elicited an admission that she had "no way of knowing" how the samples were handled before arriving at DPS.   More broadly, whether the blood flecks came from contamination was vigorously contested at trial. *See*, *e.g.* *Swearingen* [*v. State*], 424 S.W.3d. [32, ] 39 [Tex. Crim. App. (2014) (Fourth DNA motion)] (observing that "[t]he jury chose to believe that the foreign DNA either was contamination or that it came from outside the context of the crime"); [*Ex parte*] *Swearingen*, 2009 WL 249778 at *5 n.7 [Tex. Crim. App. 2009) (sixth state writ)] (Cochran, J., concurring) (listing post-conviction court's finding on blood flakes). Any "reasonable attorney would have been put on notice" that they should have probed the basis for Carradine's testimony this issue—and Swearingen's attorneys did just that at trial. *See Blakman v. Davis*, 909 F.3d 772, 779 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1215 (2019).

*In re Swearingen*, 19-20565 slip op. at 6–7.

Moreover, the DPS Letter that he relies on to attack the veracity of Sandy Musialowski's testimony was written in response to an inquiry Swearingen made of DPS entitled "Request for Correction, L–268694" dated June 18, 2019. See Motion Exhibit 3. The Crime Laboratory Director replied a mere month later on July 19, 2019. *Id.* Swearingen offers no explanation for why he waited until the two months prior to his execution to send this inquiry to DPS. Nor has he demonstrated that the information contained therein would not have been provided previously, had he submitted a more timely inquiry. As found by the Fifth Circuit in considering Swearingen's claim regarding Musialowski's testimony, the significance of the pantyhose evidence was also readily apparent to counsel at trial. *Id*. at 9–10.

## II.   Even if His Motion Were Not Untimely, Swearingen Fails to Plead Circumstances Warranting the "Extraordinary Remedy" Afforded Under Rule 60(b).

Swearingen seeks relief under Rule 60(b) from this Court's 2009 dismissal of his successive habeas petition. *See* ECF No. 36.  The Court dismissed the petition after finding that (1) "[t]he factual predicate for the claims existed well before Swearingen's petition; and (2) "Swearingen has not clearly and convincingly shown actual innocence in light of the evidence as a whole" *Id*. at 21–45. ; *see also* 28 U.S.C. § 2244(b)(2)(B). Nothing in Swearingen presents here justifies a second look at that decision. Indeed, his Rule 60(b)

4

motion is essentially a regurgitation of his recently rejected motion seeking authorization from the Fifth Circuit to file another federal habeas petition. *See In re Swearingen*, 19-20565, Slip op. The Fifth Circuit's disposal of that motion should inform the Court's decision here. In particular, the Fifth Circuit finding that Swearingen mischaracterized the DPS letters, and that neither letter proved his false testimony claim, precludes relief here.

## B. The relief Swearingen seeks under Rule 60(b)(6) is exceptional and available in only the most extraordinary of circumstances.

There are six enumerated circumstances proscribed in Rule 60(b) under which a petitioner may obtain relief from judgment. Fed. R. Civ. Proc. 60(b). Swearingen is requesting relief from the denial of his habeas petition under the "catch-all provision" of subsection (6) that offers a reprieve for "any other reason justifying relief from the operation of the judgment."[2] Fed. R. Civ. Proc. 60(b)(c); *Hess v. Cockrell*, 281 F.3d 212, 215-16 (5th Cir. 2002). Although viewed as a "grand reservoir of equitable power to do justice,"[3] the burden

---

[2]   Although Swearingen's alludes to "fraud on the court" as a basis for granting Rule 60(b), he correctly observes that "this motion does not fit neatly into the Fifth Circuit fraud on the courts jurisprudence as described in *Lave v. Davis* because there is no proof of extrinsic fraud by counsel for respondent. *See Lave v. Davis*, 655 F.App'x 255, 259 (5th Cir. 2016) (citing *Fierro v. Johnson*, 197 F.3d, 147, 154 (5th Cir. 1999).

[3]   *Rocha v. Thaler*, 619 F.3d 387, 400 (5th Cir. 2010) (citing *Williams v. Thaler*, 602 F.3d 291, 311 (5th Cir. 2010)).

imposed to warrant relief under this subsection is not easily met. "Extraordinary circumstances" are required to merit the re-opening of a final judgment under Rule 60(b)(6). *Buck v. Davis*, 137 S. Ct. 759, 777-78 (2017); *Adams v. Thaler*, 679 F.3d 312, 319 (5th Cir. 2012) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)). Notably, the Supreme Court has recognized that "[s]uch circumstances will rarely occur in the habeas context." *Gonzalez*, 545 U.S. at 535.

Even further, this Court's discretion in determining whether Swearingen has met this lofty standard is not without constraint. Rather, it "must be exercised in light of the balance that is struck by Rule 60(b) between the desideratum of finality and the demands of justice." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981). Circuit precedent counsels that "[t]he desire for a judicial process that is predictable mandates caution in re-opening judgments." *Carter v. Fenner*, 136 F.3d 1000, 1007 (5th Cir. 1998) (quoting *Bailey v. Ryan Stevedoring Company, Inc.*, 894 F.2d 157, 160 (5th Cir. 1990)). Whatever equities Swearingen presents to the Court in support of his motion must be weighed against "the general expectation that final judgments will not be lightly overturned, the State's strong interest in finality of [the petitioner's] conviction and sentence; and the delay that will undoubtedly result from reopening this long-closed case." *See Diaz v. Stephens*, 731 F.3d

6

370, 378 (5th Cir. 2013) (holding that these and other factors "weigh in favor of denying Diaz's Rule 60(b)(6) motion.").

> **B.     Despite what Swearingen argues here, his circumstances do not rise to the "extraordinary" level required to warrant post-judgment relief.**

Swearingen cannot prove his assertion this Court's judgment "was based on false, misleading, and invalid scientific evidence." *See* ECF No. 54 at 16. In denying Swearingen's motion for authorization, the Fifth Circuit found that the DPS letters do not prove what Swearingen claims. *In re Swearingen*, 19-20565, slip op. at 5–10. Indeed, the Court found that Swearingen mischaracterized and misrepresented their significance. *Id*. Swearingen cannot establish "extraordinary circumstances" justifying Rule 60(b) relief based on factual allegations that the Fifth Circuit has explicitly rejected. Regardless, there is no miscarriage of justice here.

> **1.     As already held by the Fifth Circuit, the DPS letters Swearingen relies upon here do not prove the trial testimony at issue false or constitute "extraordinary circumstances."**

Swearingen urged in his motion to the Fifth Circuit—as he does here—that the August 9, 2019 DPS letter "proves" that Carradine offered false and scientifically invalid testimony regarding contamination as the source of the unknown male DNA profile found under Trotter's fingernails. *Id*. at 5. The

Fifth Circuit found, however, that "[t]he letter … says nothing like that." *Id*.

Rather,

> The letter first notes that Carradine "*was* qualified" to opine about contamination "within the DPS laboratory or based on the packaging and condition of the evidence," but that she lacked "direct knowledge" about how the evidence was "collected or stored prior to its submission to DPS" (emphasis added). Thus, the letter states that a "more appropriate answer" from Carradine "would have been that she could not speak to the possibility of contamination of the samples when they were outside the control of the DPS laboratory." Next, the letter states that Carradine had an "insufficient basis" to opine regarding contamination and that, therefore, she should have testified that "[t]he full range of possibilities include contamination or that it was not contamination and the [DNA] profile did come from the evidence." Contrary to Swearingen's characterization, the letter does not say that Carradine testified "falsely" and says nothing to suggest that the State "sponsored" a "false contamination theory" to "mislead" the jury. Instead, the letter says at most that Carradine lacked a foundation to opine on contamination that may have occurred when the samples were outside DPS custody, and that her answers should have recognized that nuance.

*Id*. at 5–6.

The Fifth Circuit also rejected Swearingen's assertion that the July 19, 2019 DPS Letter repudiated Musialowski's trial testimony opining that the portion of the pantyhose used as a ligature to strangle Trotter matched the cut portion of hosiery recovered from Swearingen's trailer. *Id*. at 8–9. Specifically, the Court found,

> The [false testimony] claim turns on a July 19, 2019 letter from DPS that Swearingen again misrepresents. The letter … does not "retract" Musialowski's testimony—it merely says her testimony about the match between the ligature and the torn pantyhose

would today use different terminology. "Today," says DPS, "we would report that the two pieces [of pantyhose] were once joined, but would not include the statement 'to the exclusion of all others.'" At the same time, the letter affirms that Musialowski "did not err in her reporting or testimony regarding [the pantyhose match]."

*Id*. at 6.

The facts and argument Swearingen presented to the Fifth Circuit to obtain authorization to file a successive petition—and that were rejected—are identical to, and indistinguishable from, those he urges here. The law-of-the-case doctrine provides that "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Fuhrman v. Dretke*, 442 F.3d 893, 896–87 (5th Cir. 2006) (citing *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir.1998) (quoting *Ill. Cent. Gulf R.R. v. Int'l Paper Co.*, 889 F.2d 536, 539 (5th Cir.1989)). Because the Fifth Circuit properly characterized the lack of significance of the DPS letters, and to avoid an incongruous result, that principle should apply here.

Swearingen's failure to prove his allegation that the Court relied upon false, misleading, and scientifically invalid testimony precludes the requested Rule 60(b) relief.

> **2.    Regardless, whatever marginal impeachment value the DPS Letters might afford Swearingen is wholly insufficient to establish a miscarriage of justice.**

Even assuming this Court had access to the DPS letters in adjudicating Swearingen's third federal habeas petition in 2009, they would not alter the outcome. No reasonable juror would exonerate Swearingen of Trotter's murder. Again, this is a matter already decided by the Fifth Circuit when it rejected the motion for authorization.  As explained by the Court regarding Carradine's testimony on the fingernail scrapings:

> …[E]ven assuming the facts underlying this claim are true— again, that Carradine lacked a foundation for testifying about possible contamination—we cannot say that no reasonable jury would have found Swearingen guilty "in light of the evidence as a whole." 28 U.S.C. § 2244(b)(2)(B)(ii). As the State points out, Carradine's testimony was cumulative of more detailed expert testimony from Dr. Joye Carter, from which a jury might have readily reached the same conclusion about the blood. And even if we assume the foreign DNA under Trotter's fingernails was not from contamination, that would not clearly and convincingly exonerate Swearingen. We cannot improve on the TCCA's reasoning on this point:
>
> > We are not persuaded that results showing the presence of another DNA donor in the fingernail scrapings would overcome the "mountain of evidence" of the appellee's guilt. Primarily, this is because the victim's having encountered another person would not factually exclude the appellee from having killed her.
>
> *Swearingen*, 424 S.W.3d at 38–39. Given that "mountain of evidence," jurors could have found the DNA evidence outweighed by the prosecution's case, even without a suggestion that the sample was contaminated.

*In re Swearingen*, No. 19-20565 slip op. at 7–8.

Concerning Musialowski's testimony on the pantyhose, the Fifth Circuit

reasoned:

> We think it sufficient to dispose of this claim to say this: Even if
> proven true, we do not think the claim provides clear and
> convincing evidence that no reasonable jury would find
> Swearingen guilty. In other words, even if Musialowski's
> testimony were revised from "the ligature and the pantyhose were
> a unique match to the exclusion of all others," to "the ligature and
> the pantyhose were once joined," we see no possibility that this
> would make any difference to Swearingen's guilt.

*Id.* at 9.

Finally, the Court ended by quoting a prior opinion of this court "which

underscores why Swearingen's 'new' claims in this latest phase could not

possibly have made any difference in the outcome of his trial:

> To reiterate, Swearingen was the last person that Ms. Trotter was
> seen with alive. Ms. Trotter had been in Swearingen's truck, where
> he forcibly removed hair follicles. Swearingen's histological
> evidence does not explain why she was in his house that day, why
> it was later found to be in disarray, and why he falsely claimed
> that there had been a burglary there. The evidence itself does not
> explain why papers belonging to Ms. Trotter were found near the
> house of Swearingen's parents and her cigarettes were in
> Swearingen's house. The new information does not explain why
> Ms. Trotter was found wearing the same clothes as when she
> disappeared and why she had a note given to her by a friend on
> December 8 in her back pocket. The new evidence does not show
> why cell phone records traced Swearingen to a location near where
> Ms. Trotter was found. Histology does not explain why half of a
> pair of pantyhose belonging to Swearingen's wife was found in
> Swearingen's house and the other half around Ms. Trotter's neck.
> The new evidence does not explain why the same meal Ms. Trotter
> was last seen eating was found in her stomach. Swearingen lied

> about his whereabouts, tried to fabricate an alibi, made false police reports, fled from the police, asked friends to lie in his behalf, told others that the police would be after him, and crafted an ultimately inculpatory letter to throw attention away from himself. Swearingen told other inmates, "Fuck, yeah, I did it."

*Id*. at 11 (quoting *Swearingen*, 2009 WL 4433221, at *23 (footnote omitted).

Because nothing Swearingen posits here is outside of anything ordinary and wholly fails to establish a miscarriage of justice, there is no basis upon which to grant the exceptional and rare relief Rule 60(b) affords.

## III.   Swearingen is Not Entitled to a Stay of Execution.

A stay of execution is an equitable remedy. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id*. (citing *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004)). It is well-established that petitioners on death row must show a "reasonable probability" that the underlying issue is "sufficiently meritorious" to warrant a stay and that failure to grant the stay would result in "irreparable harm." *Barefoot v. Estelle*, 463 U.S. 880, 895 (1983). Indeed, "[a]pplications for stays of death sentences are expected to contain the information and materials necessary to make a careful assessment of the merits of the issue and so reliably to determine whether plenary review and a stay are warranted." *Id*. In a capital case, a court may properly consider

the nature of the penalty in deciding whether to grant a stay, but "the severity of the penalty does not in itself suffice." *Id*. at 893.

In considering whether to grant a stay under *Nken*, a court considers (1) whether the petitioner has made a strong showing that he is likely to succeed on the merits, (2) whether the petitioner will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies. *Charles v. Stephens*, 612 F. App'x 214, 218 n.7 (5th Cir. 2015) (citing *Nken v. Holder*, 556 U.S. 418, 425–15 (2009)). The first two factors "are the most critical," and "[i]t is not enough that the chance of success on the merits be better than negligible." *Nken*, 556 U.S. at 434 (internal quotation marks omitted).

Swearingen's request for a stay of execution is conclusory. Aside from the legal argument asserted to support his Rule 60(b) motion, he makes asserts no argument attempting to justify request for a stay.  For this reason alone, his request should be denied. Regardless, the Fifth Circuit's denial of Swearingen's motion for authorization to file a successive writ alleging the same arguments asserted here is a clear indication that there is no likelihood Swearingen can succeed on the merits of the issue raised here. It is also clear that Swearingen seeks delay merely for the sake of avoiding his execution. As demonstrated, the factual predicates for the false testimony allegations currently raised have

13

been available since trial. Swearingen is not entitled to a "do over," yet he has been given multiple opportunities over the last two decades to litigate his actual innocence. Swearingen was convicted and sentenced to Trotter's murder in 2000. " Over the next two decades, Swearingen has filed a convoluted tangle of habeas applications, pro se motions, mandamus actions, and amended pleadings, seeking to overturn his conviction and postpone his death sentence. These legal machinations have resulted in Swearingen's execution being put off five times." *In re Swearingen*, No. 19–20565 slip. op. at 3. In every instance, the courts found his claim's meritless. The State has a strong interest in carrying out his sentence. This Court should not further delay justice for a sixth stay of execution. See *Martel v. Clair*, 565 U.S. 648, 662 (2012) ("Protecting against abusive delay is an interest of justice.") (emphasis in original). Consequently, this Court should deny Swearingen's motion for stay of execution.

## CONCLUSION

For the reasons set out above, the Director respectfully requests that this Court deny Swearingen's motion for Rule 60(b) relief and to stay the execution.

Respectfully submitted,

JEFFREY C. MATEER
First Assistant Attorney General

LISA TANNER
Acting Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

*s/ Tina J. Miranda*
TINA J. MIRANDA
Assistant Attorney General
Texas Bar No. 24026139
Southern District Bar No. 27728

Office of the Attorney General
Criminal Appeals Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
tina.miranda@oag.texas.gov
Telephone: (512) 936-1400
Facsimile: (512) 320-8132

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2019 I electronically filed the foregoing document with the clerk of the court for the United States District Court, Southern District of Texas, using the electronic filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means:

James G. Rytting
HILDER & ASSOCIATES, P.C.
james@hilderlaw.com

Bryce Benjet
THE INNOCENCE PROJECT
bbenjet@innocenceproject.org

*s/ Tina J. Miranda*
TINA J. MIRANDA