UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARRY RAY SWEARINGEN, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:09-CV-300 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## ORDER

In 2000, a Texas jury convicted Larry Ray Swearingen ("Swearingen" or "Petitioner") of the capital murder of Melissa Trotter ("Trotter") and he was sentenced to death. Since then, Swearingen has aggressively litigated various challenges to his conviction and sentence, including numerous habeas petitions and civil rights actions in both state and federal court. The State of Texas has set an execution date of August 21, 2019.

On the eve of an execution date in 2009, the Court of Appeals for the Fifth Circuit preliminarily authorized Swearingen to file a successive petition for a writ of habeas corpus. That same year, this Court's predecessor entered a Memorandum and Order finding that Swearingen had not conclusively met the statutory requirements for successive habeas litigation. Now, days before his current execution date, Swearingen moves for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure. Swearingen argues that recent admissions from the Texas Department of Public Safety Crime Laboratory prove that Respondent committed fraud earlier in the proceedings.

While this Court began the process of analyzing the issues brought forth by Swearingen, it learned that, unbeknownst to the Court, the Petitioner had already taken the very same issues to the

Fifth Circuit. The Fifth Circuit actually ruled approximately three hours after this case was filed. That Court analyzed in detail the very allegations made here and systematically rejected each one. This Court will briefly discuss the merits of each claim, but this discussion is at best superfluous, because a District Court is bound to follow the dictates of the unanimous Fifth Circuit panel. *See Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 n.8 (5th Cir. 1992) (superseded by statute on other grounds) ("It has been long established that a legally indistinguishable decision of this court must be followed by other panels of this court and district courts unless overruled *en banc* or by the United States Supreme Court."). The Court is so bound even if it disagrees with the conclusions. That being the case, Petitioner has two avenues to seek relief. He can either seek an *en banc* review in the Fifth Circuit or he can seek relief from the Supreme Court.

## I.  Litigation Background

For the past nineteen years, Swearingen has vigorously litigated various challenges to his conviction and sentence. After the state courts denied Swearingen's direct appeal and initial state habeas action, this Court's predecessor denied a federal habeas petition in 2005. Numerous legal challenges have followed. "Since the finality of his conviction, Swearingen has filed a convoluted tangle of habeas applications, *pro se* motions, mandamus actions, and amended pleadings. Throughout, Swearingen has tried to cast doubt on various aspects of the trial evidence against him." (Docket Entry No. 36 at 11). For the purposes of the pending matters, however, the Court does not need to review the prior litigation in detail other than to observe that, even though "Swearingen's challenges have taken evolving and overlapping paths" largely involving the forensic evidence presented at trial, "no court to this point has seriously questioned the integrity of his conviction." (Docket Entry No. 36 at 11).

The pending motion resurrects issues raised in a federal habeas petition Swearingen filed in 2009. Facing an execution date of January 27, 2009, Swearingen filed a motion in the Fifth Circuit asking permission to litigate a second federal habeas petition. Among other issues, Swearingen argued that: he is actually innocent; the prosecution presented false and misleading testimony about the internal conditions in Ms. Trotter's corpse; trial counsel failed to investigate the internal findings; and his trial attorneys should have developed evidence. The Fifth Circuit authorized this Court to consider whether a successive federal action should proceed on certain issues. *In re Swearingen*, 556 F.3d 344, 345 (5th Cir. 2009). Specifically, the Fifth Circuit preliminarily allowed Swearingen to litigate issues relating to testimony provided by the State's medical examiner about the condition of the victim's body and the timing of her death.

Under the Anti-Terrorism and Effective Death Penalty Act, the Court had an obligation as a "second-gatekeeper" to "conduct a 'thorough' review to determine if [Swearingen's 2009 petition] 'conclusively' demonstrate[d] that it does not meet AEDPA's second or successive motion requirements." *Reyes-Requena v. United States*, 243 F.3d 893, 898-99 (5th Cir. 2001) (quoting *United States v. Villa-Gonzalez*, 208 F.3d 1160, 1165 (9th Cir. 2000)); *see also* 28 U.S.C. § 2244(b)(4). The Court received considerable evidence from both parties. After reviewing the evidence, the pleadings, and the law, this Court's predecessor found that federal law did not conclusively allow Swearingen to litigate the merits of a successive federal habeas corpus petition. *Swearingen v. Thaler*, 2009 WL 4433221, at *10 (S.D. Tex. 2009). The Fifth Circuit affirmed. *See Swearingen v. Thaler*, 421 F. App'x 413, 414 (5th Cir. 2011).

## II. Swearingen's Recent Fifth Circuit Litigation and His Rule 60(b) Motion

On August 14, 2019, Swearingen filed a motion in the Fifth Circuit seeking leave to file

3

another successive federal habeas petition ("2019 successive petition"). *In re Swearingen*, No. 19-20565. Swearingen raised the exact same issues he argues here: that newly discovered evidence proves that the State withheld material evidence and sponsored false evidence at trial. Swearingen's 2019 successive petition challenged forensic evidence discussed in this Court's 2009 action. Specifically,

> the State sponsored "false and misleading" trial testimony regarding blood flecks found under Trotter's fingernails, in violation of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Second, based on another recent DPS letter, Swearingen claims the State withheld evidence that a criminologist had "manufactured" evidence that the torn pantyhose used to strangle Trotter matched the pantyhose found at Swearingen's house, in violation of both *Giglio* and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

*In re Swearingen*, 2019 WL 3854457, at *2 (5th Cir. 2019).[1]

On August 16, 2019, the Fifth Circuit denied Swearingen leave to proceed on a successive habeas petition and denied a stay of the execution. With regard to testimony regarding blood flecks under the victim's fingernails, the Fifth Circuit recounted that "[e]vidence at trial showed that the DNA profile derived from these flecks matched neither Trotter nor Swearingen," but that the Department of Public Safety ("DPS") analyst, Cassie Carradine, had testified "this blood came from 'contamination' of the sample, leading the jury to discount the possibility that the blood actually pointed to someone else as Trotter's murderer." *Id.* Swearingen cited a letter he had recently obtained from DPS which he said proved that Carradine testified falsely. The Fifth Circuit, however, found that "Swearingen mischaracterize[d] what the DPS letter says," *id.*, and that the record "tell[s] a different story" than alleged by Swearingen, *id.* at *3. The Fifth Circuit rejected Swearingen's

---

[1] Swearingen raised identical issues in a successive state application for habeas relief in state court. On August 16, 2019, the Texas Court of Criminal Appeals denied Swearingen leave to proceed on those issues. *Ex parte Larry Ray Swearingen*, No. WR-53,613-14 (Tex. Crim. App. Aug. 15, 2019).

4

argument about the blood-fleck testimony because:

> [c]ontrary to Swearingen's characterization, the letter does not say that Carradine testified "falsely" and says nothing to suggest that the State "sponsored" a "false contamination theory" to "mislead" the jury. Instead, the letter says at most that Carradine lacked a foundation to opine on contamination that may have occurred when the samples were outside DPS custody, and that her answers should have recognized that nuance.

*Id.* at *2.

The Fifth Circuit also found that Swearingen could not proceed with a new habeas action based on "trial testimony from a criminologist, Sandy Musialowski, concerning the degree of 'match' between the ligature used to strangle Trotter and the torn pantyhose found at Swearingen's home." *Id.* at *4. Swearingen argued that a recent DPS letter "retract[ed]" Musialowski's testimony, proving that she testified falsely and that the State withheld information. The Fifth Circuit, however, again found that Swearingen "misrepresent[ed]" the DPS letter. *Id.* The Fifth Circuit observed that the letter

> merely says her testimony about the match between the ligature and the torn pantyhose would today use different terminology. 'Today,' says DPS, 'we would report that the two pieces [of pantyhose] were once joined, but would not include the statement to the exclusion of all others.' At the same time, the letter affirms that Musialowski 'did not err in her reporting or testimony regarding [the pantyhose match].' We think it sufficient to dispose of this claim to say this: Even if proven true, we do not think the claim provides clear and convincing evidence that no reasonable jury would find Swearingen guilty. In other words, even if Musialowski's testimony were revised from 'the ligature and the pantyhose were a unique match *to the exclusion of all others*,' to 'the ligature and the pantyhose were *once joined*,' we see no possibility that this would make any difference to Swearingen's guilt.

*Id.* at *4 (emphasis in the original).

The Fifth Circuit found no basis on which to authorize a successive petition based on the alleged suppression of the notes underlying Musialowski's testimony. *See id.* at *4-5. In doing so,

5

the Fifth Circuit also recounted the "'mountain of inculpatory evidence,' discussed in detail by numerous courts, state and federal, that seals Swearingen's guilt for Trotter's murder":

> To reiterate, Swearingen was the last person that Ms. Trotter was seen with alive. Ms. Trotter had been in Swearingen's truck, where he forcibly removed hair follicles. Swearingen's histological evidence does not explain why she was in his house that day, why it was later found to be in disarray, and why he falsely claimed that there had been a burglary there. The evidence itself does not explain why papers belonging to Ms. Trotter were found near the house of Swearingen's parents and her cigarettes were in Swearingen's house. The new information does not explain why Ms. Trotter was found wearing the same clothes as when she disappeared and why she had a note given to her by a friend on December 8 in her back pocket. The new evidence does not show why cell phone records traced Swearingen to a location near where Ms. Trotter was found. Histology does not explain why half of a pair of pantyhose belonging to Swearingen's wife was found in Swearingen's house and the other half around Ms. Trotter's neck. The new evidence does not explain why the same meal Ms. Trotter was last seen eating was found in her stomach. Swearingen lied about his whereabouts, tried to fabricate an alibi, made false police reports, fled from the police, asked friends to lie in his behalf, told others that the police would be after him, and crafted an ultimately inculpatory letter to throw attention away from himself. Swearingen told other inmates, "Fuck, yeah, I did it."

*Id.* at *5 (quoting *Swearingen*, 2009 WL 4433221, at *23 (footnote omitted)).

On the same day that the Fifth Circuit refused to authorize successive habeas proceedings (but prior to the ruling being released), Swearingen filed the instant Rule 60(b) action based on the same grounds. Specifically, Swearingen argues that the 2009 Memorandum and Order "was tainted by false, misleading, and invalid science, and should be reconsidered pursuant to Rule 60(b)(6)" because

> (1) [the State's] DNA expert [Carradine] testified falsely at Mr. Swearingen's trial that a man's blood (whose DNA did not match Mr. Swearingen or other suspects in the case) collected from the victim's fingernails was the result of contamination; and
>
> (2) its trace analyst [Musialowski] provided scientifically invalid, false and misleading testimony about the certainty of her association of two pieces of pantyhose, and that the association could not be described as "unique" or "to the exclusion of all other pantyhose."

(Docket Entry No. 54 at 1). Relying on the same factual scenario he presented to the Fifth Circuit and providing identical interpretations of the DPS letters, Swearingen argues that "the prevalent and pernicious use of false, misleading, and invalid science" at trial resulted in "fraud by counsel for the respondent" when it was cited as a basis to sustain his conviction. (Docket Entry No. 54 at 16).

Respondent opposes Rule 60(b) relief. Respondent argues that the instant motion is not timely because Swearingen could have sought relief long before his execution became imminent. Also, Respondent argues that the issues raised by Swearingen are not extraordinary circumstances that would require post-judgment relief.[2]

### III. Rule 60(b) Standard

Rule 60(b) allows for relief from judgment under six enumerated circumstances. Swearingen specifically moved for relief from judgment under Rule 60(b)(6), known as the "catchall provision." *Solis v. Dretke*, 436 F. App'x 303, 306 (5th Cir. 2011).[3] Rule 60(b)(6) strikes a balance "between the desideratum of finality and the demands of justice." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981). Rule 60(b)(6) motions "will be granted only if *extraordinary circumstances* are present." *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002) (emphasis added); *see also Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). "Such circumstances will rarely occur in the habeas context." *Gonzalez*, 545 U.S. at 535.

The Fifth Circuit "has articulated a number of equitable factors relevant to the Rule 60(b)

---

[2] Despite the fact that Swearingen recently raised identical arguments in a motion for successive habeas proceedings in the Fifth Circuit, Respondent does not argue that the current Rule 60(b) motion constitutes a successive habeas petition.

[3] Swearingen does not base his claims on Rule 60(b)(3) which allows for relief from judgment in cases of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," likely because a motion under that provision must be filed "no more than a year after the entry of the judgment or order or the date of the proceeding."

7

inquiry" which serve "as a guide in evaluating the strength of a motion":

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

*Haynes v. Davis*, 733 F. App'x 766, 767 (5th Cir. 2018) (quotation omitted). Other relevant considerations include a "wide range of factors" such as "'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'" *Buck v. Davis*, ___ U.S. ___, 137 S. Ct. 759, 778 (2017) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)). In such cases, however, the Fifth Circuit has "cautioned that in the context of habeas law, comity and federalism elevate the concerns of finality, rendering the 60(b)(6) bar even more daunting." *Raby v. Davis*, 907 F.3d 880, 885 (5th Cir. 2018) (quotation omitted); *see also Haynes*, 733 F. App'x at 769.

## IV. Analysis

To reopen judgment via Rule 60(b)(6), a movant must clear two hurdles. First, "[a] motion under Rule 60(b)(6) must be made within a reasonable time, unless good cause can be shown for the delay." *Clark v. Davis*, 850 F.3d 770, 780 (5th Cir. 2017) (quotation and footnotes omitted). Second, "relief under Rule 60(b)(6) is available only in 'extraordinary circumstances.'" *Buck*, 137 S. Ct. at 777 (quoting *Gonzalez*, 545 U.S. at 533).

### A. Timeliness

A Rule 60(b) motion must be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1). "Timeliness . . . is measured as of the point in time when the moving party has grounds to make [a Rule 60(b) ] motion. . . ." *In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004). This Court refused to authorize a successive habeas application in 2009. Swearingen bases his Rule 60(b) motion on letters obtained from DPS in 2019. Swearingen makes no showing that the grounds on which he bases his Rule 60(b) were unavailable until shortly before his execution date. The Fifth Circuit, in fact, found that Swearingen did not make a prima facie showing that the factual predicate for his claims was previously unavailable. *See In re Swearingen*, 2019 WL 3854457, at *4 (5th Cir. 2019). Similarly, Swearingen here has not made any showing that the scientific principles on which he requested information from DPS were not available to him years earlier. Swearingen's Rule 60(b) motion is not timely.

### B. Extraordinary Circumstances

The Court may only reconsider the judgment in this case under Rule 60(b) if Swearingen shows extraordinary circumstances. Swearingen argues that the recent DPS letters prove that the State adduced "false, misleading, and scientifically invalid expert testimony" about blood flecks and the pantyhose. (Docket Entry No. 54 at 10). Swearingen argues that the State committed fraud by relying on that trial testimony, thus causing the Court to err in its evaluation of the evidence and, ultimately, refuse permission to litigate a successive habeas petition.

The Fifth Circuit has held:

> To establish fraud on the court, it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its discretion. Generally speaking, only the most egregious misconduct, such as bribery of a judge

> or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

*First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996) (quotation marks and citations omitted); *see also Fierro v. Johnson*, 197 F.3d 147, 154 (5th Cir. 1999).

Swearingen's allegations about Respondent's reliance on trial testimony are far from circumstances requiring the reopening of a judgment. As a preliminary matter, Swearingen's allegations do not show any knowing fabrication of evidence, intentional misrepresentation of scientific principles, or intentional obfuscation by the State attorneys at any point in the legal process. Moreover, the Fifth Circuit's recent rejection of Swearingen's arguments controls this Court's inquiry into whether extraordinary circumstances exist. *See Propes v. Quarterman*, 573 F.3d 225, 228 (5th Cir. 2009) ("The law-of-the-case doctrine provides that an explicit or necessarily implied resolution of a legal issue by an appellate court becomes that case's law and is to be followed in the subsequent proceedings in the case."). Swearingen's Rule 60(b) motion relies on the same interpretation of the trial evidence and DPS letters as his 2019 successive petition. In refusing to authorize successive proceedings, the Fifth Circuit found that Swearingen mischaracterized and misrepresented the new evidence, misread the record, and misapprehended the weight of the evidence against him. Aside from noting Swearingen's distortion of the record and evidence, the Fifth Circuit found no prima facie merit to his arguments. Now, Swearingen relies on those same arguments to allege fraud on the Court by Respondent. In doing so, Swearingen provides no basis on which to impute any corrupt conduct by officers of the Court. The Court, therefore, finds

10

that Swearingen's Rule 60(b) motion is without merit.[4] Furthermore, as stated above, this Court is bound by the prior unanimous decision of the Fifth Circuit on the very same issues.

IV. **Stay of Execution**

Swearingen asks for a stay of his execution date. A federal court has inherent discretion when deciding whether to stay an execution. *See Nken v. Holder*, 556 U.S. 418, 434 (2009); 28 U.S.C. § 2251(a)(1). In deciding whether to issue a stay of execution, a court must consider: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other party interested in the proceeding; and (4) where the public interest lies. *See Nken*, 556 U.S. at 425-26. The Court finds that Swearingen's Rule 60(b) motion provides no basis on which to stay his execution. Moreover, the Fifth Circuit has just denied a stay based on the same arguments.

V. **Conclusion**

The Court **DENIES** Swearingen's Rule 60(b) motion and denies his request for a stay of execution.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas this 20th day of August, 2019.

Andrew S. Hanen
United States District Court Judge

---

[4] A Certificate of Appealability ("COA") "is required to appeal a district court's denial of a Rule 60(b) motion for relief from a federal habeas judgment." *Gamboa v. Davis*, ___ F. App'x ___, 2019 WL 3521671, at *2 (5th Cir. 2019); 28 U.S.C. § 2253(c). Since the Fifth Circuit has already ruled on these issues, the Court will deny a COA and defer to the circuit court to decide if any issue needs appellate review.